SERENA M. WARNER, S.B. No. 264799
   Email: swarner@akk-law.com
ETHAN J. ZERTUCHA SB No. 340223
   Email: ezertucha@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA  95825
Telephone:  (916) 564-6100
Telecopier:  (916) 564-6263

Attorneys for Defendants CITY OF SACRAMENTO, BRIAN BRUST, AND DAVID LAUCHNER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WARIS GILDERSLEEVE, | Case No.: 2:22-cv-02145-JAM-AC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF SACRAMENTO, et al., | **DATE:**      **June 17, 2025** |
| Defendants. | **TIME:**      **1:00 p.m.** |
| | **COURTROOM: 6** |

-1-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS
I. THE AVERMENTS HERE CHALLENGED ................................................................... 5
   A. M<small>OVANTS</small> N<small>EED</small> D<small>EFEAT</small> S<small>OLELY</small> W<small>HAT</small> I<small>S</small> P<small>LED</small> ................................................................ 5
   B. S<small>UMMARY</small> O<small>F</small> F<small>ACTUAL</small> A<small>LLEGATIONS</small> A<small>ND</small> C<small>LAIMS</small> F<small>OR</small> R<small>ELIEF</small> ....................................... 5
II. FACTS AS SHOWN BY EVIDENCE .......................................................................... 7
   A. D<small>ISPARATE</small> T<small>REATMENT</small> ...................................................................................... 7
   B. H<small>OSTILE</small> E<small>NVIRONMENT</small> – B<small>RUST</small> A<small>ND</small> L<small>AUCHNER</small> ..................................................... 8
III. CITY DID NOT ACT ADVERSELY TO GILDERSLEEVE .................................................. 9
   A. G<small>OVERNING</small> L<small>EGAL</small> P<small>RINCIPLES</small> ............................................................................ 9
   B. N<small>O</small> M<small>ATTER</small> C<small>OMPLAINED</small> A<small>BOUT</small> A<small>ND</small> E<small>VIDENCED</small> H<small>ANDICAPPED</small> G<small>ILDERSLEEVE</small> ........... 9
   C. N<small>O</small> I<small>NDIVIDUAL</small> L<small>IABILITY</small> I<small>S</small> P<small>OSSIBLE</small> ..................................................................... 10
IV. THE HOSTILE ENVIRONMENT CLAIMS AGAINST BRUST AND LAUCHNER LACK LEGAL AND FACTUAL FOUNDATIONS ................................................................................. 11
   A. G<small>OVERNING</small> L<small>EGAL</small> P<small>RINCIPLES</small> ........................................................................... 11
   B. G<small>ILDERSLEEVE'S</small> T<small>ESTIMONY</small> C<small>ONDEMNS</small> L<small>IABILITY</small> ............................................... 12
V. THE FAILURE TO PREVENT DISCRIMINATIONN CLAIM SHOULD FAIL WITH SUMMARY JUDGMENT OF THE UNDERLYING CLAIM ........................................... 13
VI. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

*Bailey v. S.F. Dist. Attorney's Office*,
  16 Cal.5th 611 (2024) .................................................................................................... 11

*Burnett v. Tyco Corp.*,
  203 F.3d 980 (6th Cir. 2000) ........................................................................................ 12

*Caldwell v. Paramount Unified School Dist.*,
  41 Cal.App.4th 189 (1995) ............................................................................................ 9

*Campbell v. State Dep't of Educ.*,
  892 F.3d 1005 (9th Cir. 2018) ...................................................................................... 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ....................................................................................................... 5

*Coffin v. Safeway, Inc.*,
  323 F. Supp. 2d 997 (D. Ariz. 2004) ............................................................................ 11

*Coleman v. Quaker Oats* Co.,
  232 F.3d 1271 (9th Cir. 2000) ........................................................................................ 5

*Coomes v. Edmonds Sch. Dist. No. 15*
  816 F.3d 1255 (9th Cir. 2016) ........................................................................................ 5

*Davis v. Team Elec. Co.*,
  520 F.3d 1080 (9th Cir. 2008) ........................................................................................ 9

*Dickson v. Burke Williams, Inc.*,
  234 Cal.App.4th 1307 (2015) ....................................................................................... 13

*Dominguez-Curry v. Nev. Transp. Dep't*,
  424 F.3d 1027 (9th Cir. 2005) ...................................................................................... 12

*Etter v. Veriflo Corp.*,
  67 Cal.App.4th 457 (1998) ........................................................................................... 11

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ..................................................................................................... 12

*Fiol v. Doellstedt*,

1        50 Cal. App. 4th 1318 (1996) ....................................................................................... 11

2 *Godwin v. Hunt Wesson, Inc.*,

3        150 F.3d 1217 (9th Cir. 1998) ........................................................................................ 9

4 *Greenlaw v. Garrett*,

5        59 F.3d 994 (9th Cir. 1995) .......................................................................................... 10

6 *Herberg v. California Institute of the Arts*,

7        101 Cal.App.4th 142 (2002) ......................................................................................... 11

8 *Jones v. Lodge at Torrey Pines Partnership*,

9        42 Cal.4th 1158 (2008) ................................................................................................ 10

10 *Lucas v. Chi. Transit Auth.*,

11        367 F.3d 714 (7th Cir. 2004) .......................................................................................... 9

12 *Miller v. Maxwell's Int'l*,

13        991 F.2d 583 (9th Cir. 1993) ........................................................................................ 10

14 *Pickern v. Pier 1 Imps. (U.S.), Inc.*,

15        457 F.3d 963 (9th Cir. 2006) .......................................................................................... 5

16 *Porter v. Calif. Dept. of Corrections*,

17        419 F.3d 885 (9th Cir. 2005) ........................................................................................ 12

18 *Reno v. Baird*

19        18 Cal.4th 640 (1998) .................................................................................................. 12

20 *Scotch v. Art Institute of California*,

21        173 Cal.App.4th 986 (2009) ......................................................................................... 13

22 *Spokoiny v. Univ. of Wash. Med. Ctr.*,

23        2025 U.S. App. LEXIS 5698 (9th Cir. Mar. 10, 2025) ................................................... 9

24 *Thompson v. City of Monrovia*,

25        186 Cal. App. 4th 860 (2010) ....................................................................................... 12

**Rules**
Cal. Government Code § 12900 ............................................................................................... 6
Cal. Government Code § 12940(k) ........................................................................................... 6
Cal. Government Code 12940(j) ............................................................................................. 11

This memorandum supports three motions: (1) by Brian Brust for summary judgment; (2) by David Lauchner for summary judgment; and (3) by City of Sacramento for partial summary judgment. None challenge whether Gildersleeve encountered a racially-hostile environment *per se*. Rather, the City attacks his disparate treatment claims, whereas Brust and Lauchner address their alleged contributions to the racial hostility.

## I.   THE AVERMENTS HERE CHALLENGED

### A.   MOVANTS NEED DEFEAT SOLELY WHAT IS PLED

As a summary judgment motion tests the complaint's factual averments, the plaintiff may not oppose the motion by asserting unpled acts or events. *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (complaint's vague reference to "may include, but is not limited to" certain types of building barriers insufficient to justify specific barrier facts asserted in opposition papers). A limited exception exists where the plaintiff clearly articulates during discovery an intention to pursue recovery on that unpled theory, though whether such notice suffices absent a successful concurrent motion to amend is unclear. *See Coleman v. Quaker Oats* Co., 232 F.3d 1271, 1294 (9th Cir. 2000).

The motion may negate the factual averments in two manners: (1) by affirmatively demonstrating their falsity through citation to contrary evidence; and/or (2) for those facts the movant lacks the burden of establishing at trial, by asserting the absence of evidence supporting the averment, in which case the burden shifts to the plaintiff to offer supporting proof. F.R.C.P. Rule 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1261 (9th Cir. 2016) (the movant "must either produce evidence establishing [its defense] or show, through argument, that the plaintiff does not have enough evidence to establish [claim element]. . .Where the defendant meets that burden, the burden then shifts to the plaintiff to designate specific facts demonstrating the existence of genuine issues for trial").

### B.   SUMMARY OF FACTUAL ALLEGATIONS AND CLAIMS FOR RELIEF

Despite the complaint's organization that identifies just three claims for relief, it potentially pleads six distinct theories of liability: (1) racially disparate treatment by City of Sacramento and

1  "Does" in violation of Title VII (42 U.S.C. § 2000e) (First); (2) racial harassment by City of
2  Sacramento and "Does" in violation of Title VII (42 U.S.C. § 2000e) (First); (3) racially disparate
3  treatment by all Defendants in violation of Cal. Government Code § 12900 (Second); (4) racial
4  harassment by all Defendants in violation of Cal. Government Code § 12900 (Second); (5) failure
5  by City of Sacramento and "Does" to prevent racial discrimination, in violation of Cal.
6  Government Code § 12940(k) (Third); and (6) failure by City of Sacramento and "Does" to prevent
7  racial harassment, in violation of Cal. Government Code § 12940(k).  (ECF # 4, ¶¶ 29-37.)

8  The supporting facts (or conclusions where facts are absent) alleged are:

9  (a) Gildersleeve commenced working for City as a fire prevention officer, then chose to
10 enter the largely white fire suppression department, commencing his year-long probationary term
11 in March, 2020 and thereafter rotating among several stations (*id*, ¶¶ 13-15);

12 (b) during his probationary period, Gildersleeve directly heard: (i) a white "acting" (i.e.,
13 temporary) captain curse Black Lives Matter while watching a media news report (¶ 16); (ii) a
14 white co-worker "utter a form of the N-word" (*id*.); (iii) white firefighters at Station 6, including
15 Captains Brust and Lauchner, "treated the other Black firefighter dismissively" and ostracized him,
16 then did the same to Gildersleeve, yet not to the white probationary firefighter (¶ 18); (iv) white
17 employees yelled and cursed at him while unfairly criticizing his work (¶¶ 19, 21); (v) Brust and
18 Lauchner observed, but made no effort to curtail, that yelling and cursing at Gildersleeve, and also
19 undeservedly critiqued Gildersleeve's performance (¶¶ 18-21); (vi) firefighters sometimes better
20 treated white reporting citizens versus black citizens (¶ 19); and (vii) Lauchner cursed and yelled
21 at Gildersleeve for  not disposing of trash and for wearing a "Fire Prevention" patch on his jacket,
22 which scolding Brust observed but did not correct, and "wrote up" Gildersleeve for the matters (¶
23 22);

24 (c) also during his probationary period, Gildersleeve was told by black firefighters about
25 various racially offensive remarks or mistreatment by white firefighters (¶ 17);

26 (d) Brust refused to approve Gildersleeve's transfer to a different station, citing his
27 deficient performance and "write ups," but Chief Helvin overruled Brust, enabling Gildersleeve to
28 timely transfer (¶¶ 23-24);

1      (e) post-transfer, Brust and Lauchner "disparaged Gildersleeve's abilities" to his new
2  captains despite that his prior failings stemmed from his receipt of outdated study materials (¶ 25);
3  and

4      (f) six weeks later, Gildersleeve injured his shoulder during water rescue training due to
5  leaky equipment knowingly given him by Lauchner (¶ 27).

6      Even read in context with the preceding factual averments, the charging averments leave
7  indeterminate whether Gildersleeve asserts (a) City allowed a racially-hostile atmosphere to exist,
8  which situation qualifies as a type of discrimination, rendering harassment and discrimination here
9  synonymous (which would better explain the three-claim organization), or rather (b) that he both
10 encountered a hostile environment and also was otherwise disparately treated due to his race.
11 During the requisite pre-motion meeting of counsel, Gildersleeve's attorney confirmed that he
12 intends (b), meaning six claims exist.

## II. FACTS AS SHOWN BY EVIDENCE

### A. DISPARATE TREATMENT

Gildersleeve has been employed by City since about 2005. (Ex. A, p. 13:12-15.) After a short stint as a plumbing inspector, he became a fire prevention officer and remained in that department until 2019. (*Id*. at 13:16 – 14:9, 17:18-20.) At that time, he entered the fire suppression academy. (*Id*. at 23:19 – 24:1.) Upon graduation, he became a probationary firefighter, assigned initially to Station 43, then to Station 4, to 15, to 6, and finally at 2. (*Id*. at 85:10 – 86:4, 128:19-24.) He encountered no racial obstacles/problems at Stations 43, 4, and 2. (*Id*. at 86:14-25, 196:18-20.) Brust and Lauchner were Captains at Station 6. (*Id*. at 166:15 – 168:17.) Although Captain Brust opposed Gildersleeve's rotation from Station 6 to Station 2, Chief Helvin approved it on the ground he disagreed with the criticisms of Gildersleeve's progress. (*Id*. at 192:4 – 194:16.) Upon arrival at Station 2, its captains assured Gildersleeve they would disregard prior criticisms of his work. (*Id*. at 195:8 – 196:5.)

In January 2021, while still at Station 2, Gildersleeve participated in water rescue training. (*Id*. at 198:12-24.) Captain Lauchner participated by issuing trainees dry suits and instructing on their proper fastening. (*Id*. at 199:9 – 200:13.) Gildersleeve asked for size extra large and Lauchner

1  handed him one from a number of suits hanging nearby – Gildersleeve's suit was not pre-marked
2  as specifically for him. (*Id*. at 199:19 – 200:21.)  Upon entering the water, the suit began to leak,
3  so Gildersleeve exited the river, had the suit drained, and Lauchner "went to his truck and grabbed
4  me another suit," which also leaked. (*Id*. at 202:4 – 203:2.) Gildersleeve nonetheless decided to
5  proceed with training without disclosing the second leak and, due to the extra water inside the suit,
6  got stuck under a pipe and injured his shoulder.  (*Id*. at 203:3 – 205:25.) Gildersleeve concludes
7  Lauchner either knew the suits were defective or else lacked the requisite familiarity with the
8  equipment. (*Id*. at 206:8 – 207:2.) Gildersleeve received workers compensation benefits and
9  underwent treatment. (*Id*. at 208:8 – 209:10.) He later elected to return to fire prevention and, in
10 2023, became a senior fire prevention officer for construction plan review.  (*Id*. at 22:20 – 23:15,
11 128:7-14.)  He resumed full-time duties in 2024.  (*Id*. at 210:1-24.)

12 During his deposition, Gildersleeve examined and testified about his work records
13 pertaining to his probationary fire prevention term.  (*See* Ex. A, at 175:25 – 176:7.)  Those records
14 contain numerous performance grades and daily evaluations but just a single disciplinary warning
15 (styled "Notice of Correction") regarding knot-tying deficiencies – issued by Captain Budd while
16 supervising Gildersleeve at Station 4. (Ex. B, p. 36.) No discipline, or even mention, exists for the
17 failure to remove the box or wearing a fire prevention patch events at Station 6. (Ex. B.  *See* Ex.
18 A, at 172:6 – 173:3 [admitting the admonishment might not have been written and indicating
19 inability to find any such writing in his records].)

20 **B.   HOSTILE ENVIRONMENT – BRUST AND LAUCHNER**

21 In deposition, Gildersleeve identified two reasons for suing Brust: (1) telling Gildersleeve
22 on several occasions "that sounds like an excuse to me" in response to Gildersleeve's proffered
23 justification for a perceived performance flaw (Ex. A, p. 215:2-12); and (2) failing to correct others
24 who he heard curse/berate Gildersleeve (*id*. at 216:25 – 218:5). (*See also id*. at 224:14-17.)

25 As to Lauchner, Gildersleeve explained that Lauchner was never "warm" with him and
26 uniquely scolded and tested him, which disparity Gildersleeve "felt" was racial. (*Id*. at pp. 224:18-
27 23, 225:18 – 226:23, 227:19 – 228:9.) Lauchner also acted dismissively toward Joe Hunter, another
28 black firefighter, by not verbally acknowledging Hunter's statements during dinner conversation.

1  (*Id*. pp. 228:22 – 229:19. *See also id*. at 230:20-24.)

## III. CITY DID NOT ACT ADVERSELY TO GILDERSLEEVE

**A.  GOVERNING LEGAL PRINCIPLES**

To state a *prima facie* case of disparate treatment discrimination under Title VII and under FEHA, the plaintiff must present evidence (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998) ("California law under the FEHA mirrors federal law under Title VII").

As to the third element, an adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Davis*, 520 F.3d at 1089. A low performance review, standing alone, without impact on the compensation, terms, conditions, or privileges of employment does not amount to an adverse employment action. *Spokoiny v. Univ. of Wash. Med. Ctr.*, 2025 U.S. App. LEXIS 5698, at *3 (9th Cir. Mar. 10, 2025); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) ("[t]here must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit"). Should the plaintiff fail to state a *prima facie* case, the employer may prevail on that basis alone. *Caldwell v. Paramount Unified School Dist.*, 41 Cal.App.4th 189, 202 (1995) ("{c}ommonly, an employer will seek summary judgment, arguing that the plaintiff has not satisfied one of the four elements of the prima facie case and thus is not entitled to proceed to trial"). *See Goodwin*, 150 F.3d at 1220 [applying *McDonnell-Dougla*s burden-shifting test to FEHA claims re summary judgment).

**B.  NO MATTER COMPLAINED ABOUT AND EVIDENCED HANDICAPPED GILDERSLEEVE**

Notably absent here is a typical adverse employment event, such as termination, demotion, pay reduction, or suspension. Instead presented is a probationary firefighter who progressed through his station rotations but failed to matriculate solely due to a workplace injury, after which he continued employment with City in his prior department and eventually promoted. His single

demerit, from Captain Budd, he does not attribute to race. Moreover, he admits that, upon arrival at Station 2, his slate was "wiped clean," i.e. that any prior negative marks or criticisms were obviated. Regardless, the "needs improvement" grades he received came from each station and would not have ultimately impacted his ability to pass probation, as forcefully illustrated by Captain Henley's disagreement with some of the negative marks in approving his continued rotation. (*See further* Declaration of Josh Calista, ¶¶ 2-4. *See also* Ex. A, p. 248:7-20 [stating he was told "needs improvement" grades were typical during probation].)

Similarly, even assuming an inability to rotate from one station to another during probation could be deemed materially "adverse," Gildersleeve did timely move to Station 2. Unlike criminal law, no Title VII liability exists for "attempted" punitive employment events that fail to actually detriment the employee.

Although Gildersleeve asserts Lauchner indirectly caused his shoulder injury by knowingly giving him leaky suits, his view rests on faulty speculation rather than any potentially admissible evidence of ill intent. Ironically, Gildersleeve acknowledges that Lauchner might not have possessed the skill level necessary to properly gauge the suits. Gildersleeve also ignores other potential (and more plausible) scenarios, such as that someone else examined the suits prior to Lauchner's random distribution, or that Gildersleeve didn't correctly secure/fasten the suits before his water entry.

Due to the absence of an adverse action, the "discrimination" prongs of the First, Second, and Third claims fail to warrant a trial.

C. **NO INDIVIDUAL LIABILITY IS POSSIBLE**

Regardless of adverse action, neither Title VII nor FEHA recognizes individual liability for disparate treatment discrimination. *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995) ("[u]nder Title VII there is no personal liability for employees, including supervisors such as McMillin," citing *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993); *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1164 (2008) (chronicling prior such holdings). Accordingly, Brust and Lauchner are not proper defendants to the discrimination aspect of the Second claim.

## IV. THE HOSTILE ENVIRONMENT CLAIMS AGAINST BRUST AND LAUCHNER LACK LEGAL AND FACTUAL FOUNDATIONS

Defendants do not read the FAC as alleging Title VII liability against Brust and Lauchner, nor could it. *See further Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1001 (D. Ariz. 2004) (applying several Ninth Circuit Title VII opinions to dismiss sex harassment claim against supervisor). Although such individual liability can lie under FEHA, Gildersleeve lacks the requisite facts.

### A. GOVERNING LEGAL PRINCIPLES

The elements of a hostile environment violation of § Cal. Government Code 12940(j) are: plaintiff was subjected to harassing conduct that was (1) unwelcome; (2) because of race; and (3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Bailey v. S.F. Dist. Attorney's Office*, 16 Cal.5th 611, 627 (2024). A co-employee or supervisor may be held individually liable for his/her own harassing conduct, or for affirmatively aiding and abetting harassment by others, but not for inaction. *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("We next consider whether the supervisor is personally liable under the FEHA, as an aider and abettor of the employer, for failing to prevent sexual harassment. We conclude the supervisor is not.") As summarized in *Fiol*, at 1327:

> The case and statutory authority set forth three clear rules. First, under *Page*, a supervisor who personally engages in sexually harassing conduct is personally liable under the FEHA. Second, under Matthews, if the supervisor participates in the sexual harassment or substantially assists or encourages continued harassment, the supervisor is personally liable under the FEHA as an aider and abettor of the harasser.

As to whether affirmative misconduct by a supervisor "substantially" aids and/or abets racial hostility, principles concerning the severity of racial hostility are instructive. For the degree of severity, physically threatening or humiliating conduct connotes greater severity than a mere offensive statement. *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 467 (1998) (applying sexual harassment principle to race claim); *Herberg v. California Institute of the Arts*, 101 Cal.App.4th 142, 150 (2002) [citing *Etter*]. For verbal conduct, explicit propositions or epithets are more

extreme than other verbal abuse. *Porter v. Calif. Dept. of Corrections*, 419 F.3d 885, 892 (9th Cir. 2005). Crude jokes and offensive (but not humiliating) language carry the least severity because they are "ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000) [distinguishing between humiliating vs. offensive utterances].) Similarly, conduct bias-neutral on its face is disregarded where the inference of illicit motive is no more reasonable than a neutral explanation. *See Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1020 (9th Cir. 2018); *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 877 (2010). Finally, normal managerial decisions, such as task/office/duty assignments, do not qualify as harassment based on an alleged biased origin. *Reno v. Baird*, 18 Cal.4th 640, 646–647 (1998).

**B.     GILDERSLEEVE'S TESTIMONY CONDEMNS LIABILITY**

In deposition, Gildersleeve confirmed that the *gravamen* of his suit against Brust and Lauchner lies in their failures to stop abuse by other firefighters. As FEHA does not recognize supervisor harassment liability for nonfeasance, left are scattered acts that fail both singularly and collectively to qualify as "substantially" aiding harassment by others:

(1) Lauchner "wrote up" Gildersleeve for his jacket patch and non-disposal of the box – no such written admonishment occurred; nothing about Gildersleeve's description of the conversation suggests a racial component; and, regardless, such discipline would constitute a managerial function;

(2) Lauchner knowingly gave Gildersleeve faulty dry suits – no evidence suggests such knowledge (indeed far more plausible reasons for the leakage exist), and, again, the incident was racially-neutral on its face;

(3) Lauchner didn't "warmly" interact with Gildersleeve and acted "dismissively" toward Joe Hunter via not verbally reacting to him – these impressions are subjective conclusions rather than objective facts and, again, are facially neutral as to race. Also, not verbally responding to Hunter equates to non-feasance rather than malfeasance;

(4) Brust's verbal expressions of non-acceptance as to Gildersleeve's proffered reasons for perceived performance flaws constituted managerial functions and, yet again, were racially neutral; and

(5) Brust and Lauchner denigrated Gildersleeve's work abilities to the Station 2 captains – this vaguely-described conversation was also managerial in nature, racially-neutral, and, by Gildersleeve's own admission, did not create or enhance racial hostility because he wasn't harassed at Station 2.

Alternatively as to #s 1 and 3-5, even if one or more of these matters possessed individual viability, their status as merely verbal and facially race-neutral utterances places them at the lowest rung of the harassment severity level, squarely in the non-actionable "ordinary workplace tribulation" category.

## V. THE FAILURE TO PREVENT DISCRIMINATION CLAIM SHOULD FAIL WITH SUMMARY JUDGMENT OF THE UNDERLYING CLAIM

"An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination." *Scotch v. Art Institute of California*, 173 Cal.App.4th 986,1021 (2009). That means, absent proof of underlying discrimination no claim for a failure to prevent discrimination can be stated. *Dickson v. Burke Williams, Inc*., 234 Cal.App.4th 1307, 1315-1316 (2015). As such, Gildersleeve's claim for failure to prevent discrimination fails for the same reasons his aforementioned FEHA discrimination claim against the City fails.

## VI. CONCLUSION

Defendants acknowledge the presence of triable issues regarding the hostile environment claims against City – the parties sharply disagree about what actually happened. In contrast, the disparate treatment claims and California FEHA claims against the individual defendants fail as a matter of law even using Gildersleeve's own testimony. The City never punished him as an employee, which he remains to this day, and the purported sins of Brust and Lauchner were *de minimis* and/or imagined.

| | | |
|---|---|---|
| 1 | Dated: April 14, 2025 | ANGELO, KILDAY & KILDUFF, LLP |

*/s/ Serena M. Warner*
By:_____
 SERENA M. WARNER
 ETHAN J. ZERTUCHA
 Attorneys for Defendants
 CITY OF SACRAMENTO, BRIAN BRUST, AND DAVID LAUCHNER