**LAW OFFICES OF JOHNNY L. GRIFFIN III**
**JOHNNY L. GRIFFIN, III** (SBN 118694)
**MANOLO OLASO** (SBN 195629)
1010 F Street, Suite 200
Sacramento, California 95814
Telephone: (916) 444-5557
Fax: (916) 444-5558
Email: jgriffin@johnnygriffinlaw.com;
molaso@johnnygriffinlaw.com

Attorneys for Plaintiff WARIS GILDERSLEEVE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| WARIS GILDERSLEEVE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO, et al.,<br><br>Defendants. | Case No.: 2:22-cv-2145-JAM-AC<br><br>**Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment or alternatively Partial Summary Judgment**<br><br>Hearing Date: June 17, 2025<br>Time: 1:00 p.m.<br>Court: 6<br><br>Before the Honorable District Judge John A. Mendez |

I, Waris Gildersleeve, do hereby declare:

1.      I am the plaintiff in the above-captioned action.

2.      I have personal knowledge of the matters stated herein and, if called upon, could and would testify competently thereto.  I submit this declaration in support of my opposition to defendants' motion for summary judgment, or alternatively partial summary judgment.

3.      I am an adult African-American man.

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

1

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200; Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

4.     I am not a lawyer and I do not have any education or training regarding lawsuits, Title VII, or FEHA.

5.     At my deposition, I was shown a copy of Sacramento Fire Department's Rules and Regulations. I became familiar with these rules and regulations during my time as a probationary firefighter. During the deposition, I was asked questions about Firefighter Ethics, which is page 3 of the Rules and Regulations. The ethics include the following: (1) "always act as a positive role model and example of integrity", (2) "act with fairness, courtesy, and good faith", (3) "accept/give constructive feedback in an honest and fair manner", and (4) [do not] "resort to unfair, illegal, or unethical methods or tactics."

6.     The Rules and Regulations also describe the following duties for officers (including captains): (1) "lead and manage in an effective and fair manner", (2) "not abuse their authority", (3) "set a positive example in all matters", (4) "be fair and firm…with subordinates", (5) and "correct the behavior of subordinates." A true and correct copy of the Rules and Regulations are attached to my declaration as exhibit 1.

7.     I worked as a Fire Prevention Officer in the City of Sacramento Fire Prevention Division of the Fire Department for approximately 14 years. The Prevention Division is responsible for, among other things, inspecting buildings within Sacramento for fire safety and compliance, and fire investigations. The Fire Suppression Division is responsible for extinguishing fires and search and rescue of distressed/injured persons.

8.     In approximately 2018, I decided to join Fire Suppression. I entered the fire academy in November 2019. When I graduated from the academy, I was ranked first in my class. I was voted by my peers to give the graduation speech at the graduation ceremony. Upon graduation, I became a probationary firefighter.

9.     A probationary firefighter (known in the Department as a "probie") is on probation for a 12-month period, during which s/he must complete two engine rotations and one truck rotation

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

2

at various fire stations throughout Sacramento. A fire engine is a water pumper designed to carry water to a fire scene and pump water through hoses. A fire truck is a vehicle that has ladders for reaching upper floors of buildings and used for rescue operations. The fire truck has equipment used for forcing entry and other rescue-related tasks. If a probie completes the rotations within the allotted time, the probie is removed from probation and promoted to permanent full-time firefighter. If the probie does not complete the required rotations within a 12-month period, that is grounds for termination from the Department.

10.     A probie must also get "signed off" for certain skills and knowledge during the 12-month probation period. A training supervisor, such as an academy instructor or a station captain performs the "sign off." The signature indicates satisfactory achievement. Once a "sign off" is received for a particular skill/knowledge set, additional sign offs are unnecessary. For example, at the academy, I received sign offs for tankline pulls, proficient use of self contained breathing apparatus (SCBA; proficient use under one minute) (I received SCBA sign off at Station 15 too, signed by Captain Icenbice), and signed off for satisfactory knowledge of my assigned medic vehicles at Station 4 (signed off by my Captain Bud) and at Station 15 (signed off by my Captain Icenbice).

11.     I underwent a 4-month evaluation. I passed.

12.     As part of my rotations, I was assigned eventually to Station 6 in South Sacramento. I started there in approximately September 2020. My rotation at Station 6 was an engine rotation meaning I was assigned to the engine (E6) (not the truck (T6) or the medic (M6)). Simultaneously, I was still doing a rotation at Station 15 for the medic (M15) and the engine (E15). A medic is similar to an ambulance. The practice at the Department is to become intimately familiar with the specific vehicle to which you were assigned, and not to other vehicles. Every vehicle at every station is unique. No two are exactly alike in terms of equipment and location of equipment/items.

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment     3
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

13.     At Station 6, Captain Brian Brust (Brust) supervises all of the firefighters for a particular shift at Station 6. He was my immediate supervisor when I showed up for my shifts at Station 6. Brust is white.

14. Brust had authority to set my schedule, assign me tasks, test my performance, and evaluate my performance in a daily performance report (TD-6 form). He had this authority over other firefighters. He also had authority to discipline me and other firefighters. Brust also had the authority to deny my rotation to another fire station (i.e., to keep me at Station 6).

15. During the time I was in Station 6, I still had not completed a truck rotation. I had already completed the required two engine rotations. Near the end of my rotation at Station 6, I was approximately 3 months away from the end of my 12-month probation term. I was looking forward to completing my truck rotation at Station 2. If I did not complete the truck rotation by the end of the term, I could be terminated. If Brust denied my rotation to Station 2, for my truck rotation, I could be terminated.

16. David Lauchner (Lauchner) was also a supervisor at Station 6, but not my immediate supervisor. Lauchner is white. To a lesser extent than Brust, Lauchner had the authority to assign me tasks. He could also give Brust input regarding my test performance.

17. When I arrived at Station 6, I saw that I and another firefighter named Joe Hunter were the only Black personnel there, and the rest of the personnel were white. Joe Hunter was not a probie.

18.     I saw how the white firefighters, including Brust and Lauchner, treated Joe Hunter (Hunter). They rarely interacted with him, rarely spoke to him, rarely acknowledged him, and did not treat him like a friend. Instead, the white firefighters, including Brust and Lauchner, congregated with each other, spoke to each other frequently, and were warm and friendly to each other.

19.     The white firefighters did not train with Hunter. Hunter's training included drills that sometimes would require two people to perform, to help one another, because the drills involved

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment     4
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

heavy equipment. Hunter was an instructor at the fire academy. He was so knowledgeable about the day-to-day and on-scene skills and tasks of a firefighter that he was entrusted by the Department to train future probies. However, at Station 6, Hunter trained by himself. Meanwhile groups of white firefighters would train with each other. They did not associate with Hunter during training despite Hunter's status as an academy instructor.

20.     I received the same treatment from the Station 6 white firefighters, including from Brust and Lauchner, as Hunter did. They rarely interacted with me, rarely spoke to me except to curse at, criticize, and ridicule me, and did not treat me like a friend.

21.     There were multiple instances when I would be present at Station 6 along with another probie named Spencer Schilling. Schilling is white. Schilling and I attended the same fire academy in 2019-2020. Schilling and I were on the same shifts at Station 6. Schilling was the only white firefighter at Station 6 who was genuinely friendly towards me. I never saw white firefighters at Station 6 yell at, ridicule, curse at, or be rude to Schilling.

22.     There was an instance when Brust told me to put away a fire hose. But then, a white firefighter named Cameron Bryant (Bryant) told me ignore the order temporarily because he would train with me on using the hose.  Later, Brust criticized me for not following his command, even though I explained to him that Bryant told me to leave the hose out because we would use the hose to train together. Brust remarked that my explanation sounded like an "excuse." Brust wrote a negative comment in a counseling notice (TD-7 dated November 9, 2020) ("I spoke with Gildersleeve about putting hose in the dryer…" ; "5 hours later it was still not done…"). Brust did not counsel Bryant about this incident (about Bryant inducing me to go contrary to Brust's command). Brust also failed to mention that in the 5-hour period in which he says the hose was not put away, I was out of the station responding to emergency calls for service. A true and correct copy of the TD-7 is attached to my declaration as exhibit 2.

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment        5
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

23.     There was an instance when Lauchner placed an unmarked box on the ground. I saw the box, but did not know Lauchner placed it there. The box was close enough to other firefighters' equipment that I assumed it belonged to someone, it was not trash, and I should not touch it. Later, Lauchner called me "fucking lazy" for not picking it up. He told me he wanted to test me to see if I would pick up the box as part of my station chores. I explained to Lauchner why I did not touch the box. He yelled at me saying he did not want to hear it and told me that if it was up to him he would "fucking fire" me "right now." Then, Lauchner saw that I was wearing my Department-issued Fire Prevention jacket and yelled and cursed at me for wearing it. He told me it was a Fire Prevention jacket and that I should not be wearing it because I was in Fire Suppression now. He told me to take the "fucking jacket off right now." Brust witnessed Lauchner's outburst. Brust did not correct Lauchner. Brust wrote a negative comment about me in a counseling notice (TD-7)("He is not taking initiative around the station pertaining to house chores…"; "If you are unclear on something, then make sure to ask"). A true and correct copy of the TD-7 is attached to my declaration as exhibit 2.

24.     There was an instance when Bryant gave me a copy of standard operating guidelines (SOG) with highlighted sections. He told me to study the SOG's well because I would be quizzed on them, including quizzes by Brust. Brust would give me quizzes, and told me I had to do better because my answers were incorrect. I studied harder, but I still kept getting answers wrong. Bryant told me to look at the highlighted SOG's he gave me and study harder. Later, when I rotated to Station 2, my captain there, Luiz, looked at the highlighted SOG's I used to study and said they were an outdated version and that I should get the most current version from the Department hard drive.  That is when I realized Bryant gave me outdated SOG's to study. The difference between the outdated SOG's and current SOG's is very noticeable; they stand out.

25.     There was an instance at the Station 6 dinner table when Ryan Gardner (Gardner), a white firefighter, asked me about my classic car. When I started to tell him about it, Gardner

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment        6
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

interrupted me and said maybe I wouldn't "fucking suck as a firefighter" if I spent as much time working on being a firefighter as I did working on my classic car. Other white firefighters, including my supervisors, Brust and Lauchner, heard this and they all laughed at me. I felt humiliated because Gardner tricked me into thinking he was being friendly and approachable when in fact he was setting me up for ridicule. Brust and Lauchner did not tell Gardner to stop, and did not counsel Gardner later. Instead, Hunter pulled Gardner aside and counseled him.

26. On multiple instances, I gave presentations in front of other firefighters at Station 6, including in front of Brust and Lauchner. I even gave one presentation that I had already given at another station (and had received a "sign off" by my captain indicating I had done a satisfactory job). During my presentations, white firefighters, including Brust and Lauchner, would interrupt me, laugh at me, question and criticize my presentation, and suggested I should try again (even during the presentation in which I had already received an approved "sign off" by a captain at another station).

27. A white probationary firefighter named Schilling served at Station 6 at the same time I did. We spoke about our experiences regarding presentations at the station. He witnessed my presentations and the way other firefighters treated me poorly. I told him my presentations were always interrupted, criticized, ridiculed, and I was told to do them again. Schilling told me he gave presentations at Station 6 and they never treated him like they treated me.

28. A white firefighter named Fleet, who was present at one my presentations, told me after a presentation in which other firefighters were interrupting and ridiculing me that he never had to do presentations when he was a probie at Station 6.

29. Another white probationary firefighter named Halvorson served at Station 6 at the same time as I did, but on different shifts. For example, on days that he was at Station 15, I was at Station 6. When I was at Station 15, he would be at Station 6. After our 8-month evaluation at McClellan Airbase, Halvorson told me that Station 6 never made him do training. My experience at

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment                7
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Station 6 was different. I did trainings, quizzes, and skill demonstrations. And unlike me, the white firefighters would often speak highly of Halvorson and admired him.

30.     There was an instance at Station 6 where a reserve engine (an older model Ford) was put in place of the regular engine which was taken away for routine service. I had never seen the reserve engine before and did not have an opportunity to inspect it. Because every vehicle at every station is unique, and no two are exactly alike in terms of equipment and location of equipment/items, I was not familiar with the layout of the reserve engine. When we went out on a call and I could not locate certain equipment on the reserve engine, Brust wrote negative comments about it in my daily report (TD-7 dated November 9 (2020)). A true and correct copy of this report is attached to my declaration as exhibit 3.

31.     There was an instance at Station 6 where white firefighters Donahue, Bryant, and Sinnett quizzed me about the medic vehicle equipment. All are white firefighters. This was a surprise quiz. Because I was not assigned to the medic vehicle at Station 6 (I was assigned to the medic vehicle at Station 15; I was assigned to the engine vehicle at Station 6), I told them that I would not be able to answer questions about the Station 6 medic vehicle. I explained to them that Ford vehicles, Dodge vehicles, and GM vehicles were different, that Station 15's vehicle was different from Station 6's vehicle, and equipment locations would be different. Predictably, I could not answer their questions regarding the Station 6 medic vehicle because it was significantly different from the medic at Station 6. When they asked me about a "papoose" I did not know what that was. Later, I found out they were using the slang word "papoose" to refer to a pediatric backboard (a child carrier). Pediatric backboard is the term used in the fire academy. All of these firefighters yelled at me and cursed me out during this quiz. Sinnett asked me "do you know how much of a fucking asshole you look like right now?" Brust heard them yelling and cursing at me. Brust told me to do better. Brust did not correct the firefighters who yelled and cursed at me. Brust then wrote a negative comment in my daily performance narrative record (TD-6 dated October 3-4

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment     8
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

(2020) ("The crew also began asking him questions regarding EMS equipment, which FF Gildersleeve did not perform well"). A true and correct copy of the report is attached to my declaration as exhibit 4.

32.     On multiple occasions, Captain Icenbice at Station 15 remarked, when reviewing my daily performance narrative records from Station 6, and wondered why I was doing so poorly at Station 6 when I was doing so well at Station 15.

33.     I and my fellow probies attended an 8-month evaluation at McClellan Airbase. Department upper management, including chiefs and battalion chiefs were present to witness our tests. They were the ones doing the grading. Brust was present but did not grade me. I did exceptionally well at my 8-month evaluation, which Brust documented in my TD-6 dated October 27-28 (2020). A true and correct copy of the report is attached to my declaration as exhibit 5.

34.     When it came to rotate to Station 2, Brust refused to sign off on my rotation. Station 2 would have been my truck rotation, which I needed to complete before my 12-month probation term ended. If I did not complete it, I could be terminated. Chief Helvin (Helvin) came to Station 6 to meet with Brust to talk about me. After they met, Helvin summoned me into the office with Brust. Helvin was looking at my daily reports and remarked there was a lot of negative stuff written about me. Then Helvin reminded me that he personally witnessed some of my drills and that what he personally saw at my drills was inconsistent with the negative things written about me in Station 6. He told me that Station 6 did not want me to go to Station 2. Helvin said I was going to rotate to Station 2. When Helvin said this, I looked at Brust and Brust looked frustrated and angry.

35.     When I arrived at Station 2 for my rotation, the captains there sat me down and told me that Station 6 had called and said negative things about me. This was unusual because normally captains let the daily reports speak for themselves without giving any unsolicited verbal input about a probie.

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment     9
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

36.     During my time on probation, I heard of many instances of anti-Black incidents in the Fire Department.

37.     A former Sacramento firefighter named Watkins told me that he was a probie at Station 6 in approximately 2017, and white firefighters there talked about Oakland and said it was so "ghetto" and so "Black."

38.     I witnessed an incident at Station 15 when a white (non-probie) firefighter whose last name was Wyatt was sitting with me and another probie watching a news story covering Black Lives Matter protests. Suddenly Wyatt yelled out, "Fuck Black Lives Matter." I and the other probie were stunned. I reported Wyatt to human resources.

39.     When I was at Station 6, I witnessed incidents of different treatment between white and Black callers. During one call from a Black family about their elderly family member in distress, white Station 6 firefighters were impatient and abrupt with the family because of a delay in getting an adult to come over to the scene to pick up some children and supervise them. Shortly after that shift, Station 6 got a call from a white family about a suspected gas leak. There was a delay in getting SMUD personnel to the scene to check for a gas leak, but this time Station 6 firefighters were patient and treated the family warmly.

40.     I talked to a Black firefighter named Jackson who told me that a white firefighter once asked him, around the time of the Black Lives Matter protests in 2020, whether he (Jackson) identified more as a Black man or as a firefighter. I never witnessed anyone ask a white firefighter if they identified more as white or as a firefighter.

41.     I talked to a Black firefighter named Lewis who told me that his captain Jerry Boyd (Boyd) referred to black children as "niglets." I am aware that Boyd has since been promoted. Lewis also told me that he heard white firefighters speak disrespectfully about Black people and the Black Lives Matter movement.

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment     10
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

42. I spoke to a white firefighter formerly of Sacramento Fire Department who said her fellow white firefighters spoke to her negatively about her dating a Black man. She said the Department was racist, that it was not what she was expecting when she joined, and that she had had enough and was going to leave.

43. I talked to a white firefighter named Maricic who told me that Captain Sweyd at Station 2, upon hearing that Maricic had bought a house, told Maricic that he should have bought a house in El Dorado Hills because there were fewer Black people there.

44. The circumstances described above weighed heavily on me. I had many sleepless nights, developed a lot of anxiety when I showed up for work at Station 6, made it difficult to concentrate at work, and made me feel like I had to prepare before every shift to withstand the disrespect, verbal abuse, and cussing.

I declare, under penalty of perjury under the laws of the state of California, that the statements in this declaration are true and correct and are based on my personal knowledge.

Executed on April 28, 2025 in Sacramento, California.

/s/ Waris Gildersleeve
Waris Gildersleeve
Plaintiff and Declarant

e-signature and authorization to e-file
received on April 28, 2025 (original signature
retained by counsel)

Plaintiff Waris Gildersleeve's Declaration in support of Opposition to Motion for Summary Judgment    11
Gildersleeve v. City of Sacramento, et al.
Case Number 2:22-CV-02145-JAM-AC

Law Offices of Johnny L. Griffin III
1010 F Street, Suite 200, Sacramento, CA 95814
(916) 444-5557
www.johnnygriffinlaw.com

Exhibit 1

# Sacramento Fire Department

# RULES

# *and*

# REGULATIONS

exh. 3

# INTRODUCTION

Every rule, regulation, directive or any provision herein contained or otherwise issued or made is subject to repeal or modification whenever, in the judgment of the City Manager, the City Council, or the Chief, it is deemed in the best interest of the Fire Department.

These rules cannot, nor are they expected to, provide a solution to every question or problem that may arise in an organization established to render emergency service.

They are not designed or intended to limit any member in the exercise of good judgment or initiative in taking the action a reasonable person would take in extraordinary situations.

All General Orders and instructions contained in the Manual of Operations and Duty Guides shall be recognized as a portion of these Rules and Regulations and shall have equal force and authority.

# FIREFIGHTERS' ETHICS

- I will act always as a positive role model and example of integrity.

- I realize that firefighters do not have the right to jeopardize public safety at any time, at any place, or for any reason. I will respond promptly and safely to all calls for service.

- I will always serve the public interest.

- I will let common sense guide my judgment. I will act with fairness, courtesy and good faith. I will accept/give constructive feedback in an honest and fair manner.

- I will remember that a person's race, creed, color, gender, sexual orientation, age, national origin or wealth and influence have no place in the delivery of service.

- I will not resort to unfair, illegal or unethical methods or tactics. I am willing to put service ahead of self. I recognize I hold a position of public trust.

- I will have the moral courage to stand by my honest convictions in trying circumstances.

- I will not align myself with any group or organization that may affect my loyalty, responsibility and obligation to the Department and the City of Sacramento.

- I will not use my position to secure privileges or exemptions for others or myself.

- I will strive to become thoroughly familiar with the details of my profession; I will respect the experience and knowledge of my associates; and I will continue to grow through professional development.

- I will work to make the Department open, efficient, responsive, and respected by the public. I will maintain confidentiality and avoid conflicts of interest, and where potential conflicts arise, disclose the circumstances expediently and fully.

- I will support and abide by the rules and regulations, policies, practices, procedures and ordinances of the Department and the City of Sacramento.

Fire Chief

ACKNOWLEDGED:
NAME (PRINT)
DATE

# OATH OF OFFICE

I do solemnly swear:

That I will support the Constitution of the United States of America and that of the State of California;

That I will obey the laws and ordinances of the City of Sacramento;

Familiarize myself with and be obedient to the Rules and Regulations and orders of the Sacramento Fire Department, and

Faithfully serve the City of Sacramento in the discharge of my duties as a firefighter to the best of my knowledge and ability.

## CITY MANAGER

The City Manager is the head of the Fire Department and has the authority to supervise, control, regulate and manage the Department. Such powers are subject to the provisions of the City Charter and to such ordinances of the City not in conflict with the grants of power made elsewhere in the Charter to each department of the City government.

## CHIEF OF FIRE DEPARTMENT

Subject to the provisions of the City Charter, the Rules and Regulations of the Department and the instructions of the City Manager, the Chief shall:

- Be the Chief Executive Officer and General Manager of the Fire Department and shall have control of all its activities, including fire extinguishment, fire protection, fire prevention, emergency medical services and fire communications.

- Furnish annually to the City Manager a budget of the amounts required for the ensuing fiscal year, in the manner prescribed by the City Manager or City Charter.

- Be empowered to impress into public service any able-bodied person whose services are needed in any emergency.

- Be empowered to cause the destruction of buildings or construction of any type, when such action is necessary to control or retard the spread of fire.

- Be empowered, in the event of unusual fire conditions or other emergencies, to suspend temporarily the operation of the platoon system. A report of this action and reasons therefore shall be made to the City Manager as soon as it is practicable.

# FUNCTIONS OF THE FIRE DEPARTMENT

Pursuant to the provisions of the Charter of the City of Sacramento, ordinances enacted by the City Council, directives from the City Manager, the Rules and Regulations of the Department, and orders issued by the Chief, the functions of the Fire Department are to:

1. Protect life, property and the environment.

2. Extinguish fires efficiently and with a minimum amount of damage.

3. Provide emergency medical services and transport.

4. Develop and effectuate proper means of fire prevention, fire protection and public education.

5. Enforce ordinances and laws relating to fires, fire prevention, and fire safety.

6. Investigate the causes of fires.

7. Investigate and report to the proper authorities fires resulting from, or accompanied by, the commission of a crime, and to render assistance in the prosecution of those guilty of committing such crimes.

8. Set up a training program and to train members of the Fire Department.

9. Maintain an efficient record management system of activities and operations of the Fire Department.

10. Assist persons or animals in distress or danger.

11. Develop and maintain a continuing program of research and development into all phases of Fire Department functions, and to inform City Officials of any potential for increased economy and/or efficiency.

12. Participate with local, regional, state and federal agencies to coordinate homeland security issues within the Sacramento region.

13. Maintain a continuing program for weed abatement within the City Limits.

# ORGANIZATION

The Fire Department is organized pursuant to the Charter of the City of Sacramento. Full authority for its complete administration is vested in the City Manager who appoints the Fire Chief and subordinate officers and personnel in numbers prescribed by the City Council. Organization units comprising the various operations of the Fire Department are as follows:

The Chief and his Command Staff of Assistants:

Senior Staff:

Deputy Chief of Operations

Deputy Chief of Support Services

Deputy Chief of Administrative Services

Financial/Support Manager

Assistant Chiefs of:

Fire Prevention Division (Fire Marshal)

Training Division

Special Operations Division

Emergency Medical Services Division

Human Resources Division

Communications Division

Shift Operations Division

Managers of:

City Emergency Services Planning

Fire Department Special Projects/Programs

Fire Department IT/Network Services

Battalion Chiefs

Fire Companies (Engines and Trucks)

Captains

Engineers

Firefighters

Medic Units

Firefighter/paramedics

Support Staff

# STANDARDS of CONDUCT

The following rules and regulations represent the conduct standards for members of the Sacramento Fire Department. Every member of the Sacramento Fire Department is expected to behave in a highly self-disciplined manner and is responsible to regulate his/her own conduct in a positive, productive and mature way. Failure to do so will result in disciplinary action ranging from counseling to termination.

ALL MEMBERS SHALL:

1. Follow the Manual of Operations and written directives of the Sacramento Fire Department and the City of Sacramento.

2. Use their training and capabilities to protect the public at all times.

3. Conduct themselves in a manner that reflects credit on the Department and the City.

4. Follow instructions and/or orders in a positive and cooperative manner. Upon receiving any order, which is in conflict with a previous order inform the officer who issued the conflicting order and be governed by his/her instructions.

5. Refrain from conduct, which is obscene, uncivil, rude or boisterous, or in altercations or other disruptive behavior while on duty.

6. Remain informed and maintain the skills necessary to perform their duties in a safe, effective and efficient manner.

7. Be concerned and protective of the public's and each member's welfare.

8. Keep physically fit.

9. Be on time for duty and not abuse or misuse their sick leave

10. Promptly report violations of Federal, State and local laws by any member of the Sacramento Fire Department to a superior officer.

11. Be diligent in the maintenance and care of Department's and Citizen's property and equipment.

12. Not condone any, group or organization that is detrimental to and/or will bring dishonor on, the Department or the City.

13. Refrain from workplace violence, harassment, discrimination or sexual conduct or create a hostile work environment while on duty.

14. Not steal from anyone or misappropriate Department or City assets.

15. Not use or possess alcohol, legal or illegal drugs, or any other substance that could impair their physical or mental capacities while on duty.

16. Perform such duties as may be required of them by their ranking officers.

In addition to the above, All Officers shall:

1. Exercise authority over their respective command, and operate in accordance with the general rules of conduct pertaining to their rank.

2. Ensure efficient administration of their duties.

3. Lead and manage in an effective and fair manner.

4. Not abuse their authority.

5. Set a positive example in all matters.

6. Be responsible for the enforcement of discipline and for the promotion and maintenance of the efficiency and morale of their respective commands.

7. Be fair and firm in their relations with subordinates.

8. Not violate or evade any law, regulation, ordinance, rule, policy, practice or procedure of the City of Sacramento or the Department.

9. Take and/or recommend disciplinary action to correct the behavior of subordinates.

10. Whenever a matter of unusual nature involves their command, promptly notify a superior officer.

11. Promptly address any questions on the part of their subordinates relative to the Department or the City.

12. Respond to emergencies and other incidents and prescribe the immediate action to be taken.

13. Arrange work and care of quarters consistent with the daily work schedule.

14. Ensure that personnel wear the uniform of the day.

15. Train with members of their respective commands to maintain a high standard of efficiency.

16. Be responsible for the efficient use of station supplies and utilities.

17. Prohibit the alteration or modification of any Department apparatus, equipment, building, appliance, or fixture without permission of the Chief.

Exhibit 2

 

# SA AMENTO FIRE DEPARTME T

## Training Division
## Probationary Firefighter Evaluation Program

## PROBATIONARY COUNSELING NOTICE

NAME **FF Gildersleeve**                    CLASS # **19-2**        DATE **11/9**

COMPANY ASSIGNMENT **E6**                SHIFT **A**

| Instructions to Company Officer/Administrative Supervisor |
|---|
| 1. Complete the narrative section for any rating of U (Unsatisfactory) |
| 2. Complete the narrative section for any acts requiring counseling by the company officer or administrate supervisor |
| 3. Comments should support any rating marks or narrative entries on the TD5 and TD6 |
| 4. Battalion Chiefs or administrative supervisors should be notified when counseling notice is completed |

**COMMENTS:**

FF Gildersleeve is struggling with attention to detail, active listening, and initiative. This has been apparent to the whole crew over the past 2 months. Day 1 I spoke with Gildersleeve about putting hose in the dryer and making sure it was re-loaded properly for shift change. Day 2, the hose was still out on rack, and I addressed it again. 5 hours later it was still not done until the Engineer reminded him again. He also had to be reminded to change out his SCBA bottle after training, and did not replace the empty in the engine once we returned to station. He is not taking initiative around the station pertaining to house chores and normal station duties for junior members.

**CORRECTIVE ACTIONS:**

FF Gildersleeve needs to pay attention to details and be more aware of these. It is not acceptable to continually be reminded about fixing, re-stocking, or reloading equipment. He needs to take advantage of down times and work hard for the station as well. He needs to listen to direction and instruction, making sure to follow through. If you are unclear on something, then make sure to ask. Do not wait for others to work first, he needs to take initiative.

Brust

COMPANY OFFICER

BATTALION CHIEF                              PROBATIONARY FIREFIGHTER

**Original- to Division of Training**              **Copy- remains in packet**

TD-7

Exhibit 3



SA͡ AMENTO FIRE DEPARTME͡ T

Training Division
Probationary Firefighter Evaluation Program

PROBATIONARY COUNSELING NOTICE

NAME **FF Gildersleeve**          CLASS # **19-2**          DATE **11/9**

COMPANY ASSIGNMENT **E6**          SHIFT **A**

| Instructions to Company Officer/Administrative Supervisor |
|---|

1. Complete the narrative section for any rating of U (Unsatisfactory)
2. Complete the narrative section for any acts requiring counseling by the company officer or administrate supervisor
3. Comments should support any rating marks or narrative entries on the TD5 and TD6
4. Battalion Chiefs or administrative supervisors should be notified when counseling notice is completed

**COMMENTS:**

E6 is in a reserve rig for rotation. In the late morning, he was asked where the RAM was located. Waris was unable to tell the crew exactly where it was located. We then asked about the stinger base, same answer. Later in the afternoon, he did not know where the water can was located while at a small car fire. Day 2, he was unable to answer questions regarding the LDH shorty's locations. During a WS evolution, it was clear he did not know what tools were in his hydrant bucket, as he ran to the engine to find the same appliance in the bucket. During his SAC pack presentation, he could not answer some simple questions nor did he have any idea how to convert into a coil.

**CORRECTIVE ACTIONS:**

Waris continues to have an unacceptable knowledge and understanding of the tools and equipment on the engine. There is no excuse for not knowing these things at this point in his probation. He needs to work harder and study harder on and off duty. There are way too many topics and questions asked of him where he looks as if he has never heard of the topic. He needs to study the handbooks and make this a priority if he wants to succeed in this career.

Brush

COMPANY OFFICER                     PROBATIONARY FIREFIGHTER

BATTALION CHIEF

**Original- to Division of Training**          **Copy- remains in packet**

TD-7

Exhibit 4

# SA᷈ᴀMENTO FIRE DEPARTME᷈ᴛ

### Training Division
### Probationary Firefighter Evaluation Program

## DAILY PERFORMANCE NARRATIVE RECORD

NAME __Waris Gildersleeve__          CLASS # __19-2__          DATE(S) __10/3-4__

COMPANY ASSIGNMENT __E6__          SHIFT __A__

| Instructions to Company Officer/Administrative Supervisor |
|---|
| 1. Complete the narrative section at the end of each shift/rotation |
| 2. Comments should support any rating given on the TD-5 |

**FAVORABLE COMMENTS:**

FF Gildersleeve continues to be very positive and professional while at work. Day 1 we pulled a lot of hose lines, mostly tanklines. We were able to progress to a few 200' pulls. We also touched on 2 1/2" hoslines as well. Overall, he has shown some improvement in his pulls and understanding of hose. He went to a 8 month prep probie drill day 2 which lasted into the afternoon. He stated that it went well, his partner and him nailed one evolution. But also stated the 24' and roof ladder evolution did not go well. He also re-did his SCBA and Radio presentations to the station after not performing especially well last rotation. He improved and now appears to have a much better understanding of this vital equipment. We did not have a chance to quiz him on all the engine, but did ask him several questions about equipment which he definitely showed better knowledge and understanding. We have been very active in training Waris, and he continues to be positive and asking for another rep.

**UNFAVORABLE COMMENTS:**

Although some overall improvement, his hose evolutions still need significant improvement. We will continue to train hard and hope to be able to move on to more advanced evolutions soon. After observing FF Gildersleeve on more medical calls, we have noticed that he quickly gets a BP but then has trouble knowing what needs to be done next or staying engaged. The crew also began asking him questions regarding EMS equipment, which FF Gildersleeve did not perform well. His lack of knowledge of EMS equipment is not acceptable at this point in his probation. He needs to study very hard before coming back, where he will be quizzed again on the EMS and ambulance. He needs to learn where he should fit in on calls and how to best assist the paramedics. He needs to be more observant on the calls and be able to know what needs to be get done depending on the complaint/call type.

Brust
_____
COMPANY OFFICER

_____
PROBATIONARY FIREFIGHTER

Original - to Division of Training          Copy- remains in packet

TD-6

Exhibit 5

# SA( .AMENTO FIRE DEPARTME  T

## Training Division
## Probationary Firefighter Evaluation Program

## DAILY PERFORMANCE NARRATIVE RECORD

NAME Waris Gildersleeve                CLASS # 19-2        DATE(S) 10/27-28

COMPANY ASSIGNMENT E6                SHIFT A

| Instructions to Company Officer/Administrative Supervisor |
|---|
| 1. Complete the narrative section at the end of each shift/rotation |
| 2. Comments should support any rating given on the TD-5 |

## FAVORABLE COMMENTS:

FF Gildersleeve began the rotation with his 8 month PT assessment, where he stated he did well for his age standards. Once he came back to station, we did many different evolutions in preparation for his 8 month eval day 2. His force entry reps went pretty well, some minor corrections needed but finished satisfactorily. His tankline pulls went well also. He continues to have a great attitude and very positive. He and his partner performed well in all evolutions during his 8 month evaluation. Only minor comments and suggestions by the proctors. He worked hard at a good fire ground pace and did well. He showed up and did great overall. He struggled the first couple times with the 35' ladder during prep, we worked very hard the rest of the day and he did it great during the eval. This was encouraging to see as he applied the knowledge and skills practiced to his performance.

## UNFAVORABLE COMMENTS:

Waris is still struggling to find his way during EMS calls. His partner talked to him during and after every call to help him figure out how he can be more useful during medical aids. The firefighters also quized him on his EMS equipment. During this he showed that his basic knowledge of equipment has improved, but he needs to continue to learn how all the equipment is used and how to set up for his paramedic partners. He needs to continue to work on his active listening and comprehending skills. Also, pay attention to the details. Day 1 we addressed him not having his MMR cup on his belt and that needs to be on there, he had to be reminded by the crew the next day because he had not corrected this.

Brust

COMPANY OFFICER                                PROBATIONARY FIREFIGHTER

Original - to Division of Training        Copy- remains in packet

TD-6